**S&S SERVICES, INC., Plaintiff**

**v.**

**LAURANCETEEN ROGERS A/K/OA**

**LAURENCETEEN ROGERS CHAPMAN, Defendant**

**SOOGAN RAJBIR and CHANDRIKA RAJBIR, Plaintiffs,**

**v.**

**LAURENCETEEN ROGERS A/K/A**

**LAURENCETEEN ROGERS CHAPMAN, Defendant**

Case No. 91-207

District Court of the Virgin Islands

Div. of St. Thomas and St. John

January 14, 1999

ROBERT L. KING, St. Thomas, *for Plaintiff*

LEMUEL F. CALLWOOD, St. Thomas, *for Defendant*

MOORE, Chief Judge

## MEMORANDUM

S&S Services, Inc. ["S&S"] has moved for summary judgment in this case involving the reputed transfer of title to Parcel No. 56-79 Estate Frydenhal ["the Parcel"]. S&S seeks judgment that the defendant, Laurenceteen Rogers Chapman ["Rogers Chapman"], has no legal claim to title in the Parcel, that Rogers Chapman wrongfully maintains physical possession of the Parcel, and that S&S is the rightful owner of the Parcel.[1]

Plaintiffs Soogan and Chandrika Rajbir [the "Rajbirs"] are wife and husband, as well as sister and brother-in-law of Siewdath Sookram ["Sookram"], principle shareholder of S&S. It is undisputed that the Rajbirs owned the Parcel as of 1990. Sookram evidently introduced Rogers Chapman and the Rajbirs. In July of 1990, the Rajbirs and Rogers Chapman entered into an oral agreement, never reduced to writing, for the sale of the Parcel. The purchase price, which is in dispute, was between $42,000 and $45,000. It is undisputed that the terms included a down payment, that title would pass by delivery of a deed upon payment of the balance, and that the Rajbirs drew up and fully executed a deed for this purpose to Rogers Chapman. It is similarly undisputed that a check for the down payment was mailed to the Rajbirs, that Rogers Chapman placed a stop-payment order on the check before it could be negotiated, and that the executed deed was not delivered to Rogers Chapman at that time.

Subsequently, Sookram and S&S contracted to purchase the property from the Rajbirs. It is unclear whether this contract was reduced to writing, and if so, whether it was signed by all the parties, and whether the contract terms, including price, were the same as the oral agreement with Rogers Chapman. Title would only pass after full payment, and S&S was permitted to begin construction on the property in August of 1990.

---

[1] Another, related, case has been progressing in parallel, Civil No. 91-405. Because of the similarity of the issues, as well as the interrelationship of the parties, these cases will be consolidated by the attached order. This memorandum applies with equal force to both matters.

It is undisputed that construction progressed and that, by January of 1991, Sookram agreed to sell the developed property to Rogers Chapman for $330,000. A written contract of sale was finally drafted by John Archibald ["Archibald"], the accountant for both Rogers Chapman and Sookram, the terms of which are also undisputed. (*See* Contract of Sale, Exh. I of appendix to motion.) Rogers Chapman would pay a deposit of $100,000 upon the signing the contract. At closing, Rogers Chapman was to deliver a $230,000 first priority mortgage note in exchange for the deed. The note was to be paid in lump sum upon Rogers Chapman securing mortgage financing from a lending institution within 90 days of closing. The parties do not dispute that Rogers Chapman delivered a check made out to Sookram in the amount of $100,000 to Archibald and that Archibald gave Rogers Chapman a copy of the unsigned contract on approximately January 30, 1991.

There is one last set of facts on which the parties agree, namely, that somehow Rogers Chapman came into possession of the deed to the Parcel the Rajbirs had executed to Rogers Chapman in July of 1990 and that she recorded the deed on March 6, 1991, by paying the stamp tax of 2% (ordinarily paid by the seller) and a $100.00 penalty for not filing the deed within six months of its execution. The deed is recorded at the Office of the Recorder of Deeds for the District of St. Thomas and St. John in Vol. 37-H, at page 333, Doc. No. 898, as noted in Aux. 39, page 97, dated March 6, 1991. Rogers Chapman also has signed the contract of sale, which has also been signed by Sookram, although there exists an immaterial dispute whether this was before or after she recorded the deed. Since 1991, Rogers Chapman has apparently treated the property as her own and prevented S&S from completing construction on the parcel.

A seeming factual dispute which the Court must resolve before summary judgment can be considered is how Rogers Chapman obtained possession of the deed. The parties agree that the deed to the Parcel the Rajbirs had executed to Rogers Chapman in July of 1990 somehow had come into Archibald's possession and that Rogers Chapman obtained it from him. Archibald has given an affidavit that he unknowingly and inadvertently passed the deed to Rogers Chapman at the same time he intentionally gave her the contract. (Archibald Aff. Exh. B at 7-8.) All knowledgeable persons

322

(the Rajbirs, Sookram and Archibald) affirm that Archibald had no authority to turn over the deed and Archibald swears that he did not knowingly or intentionally give it to Rogers Chapman. While Rogers Chapman may wish to dispute whether Archibald had authority and whether the transfer of the deed was inadvertent and accidental, she has provided no countervailing affidavit or other credible evidence to support her contention.

## ANALYSIS

### Standards for Summary Judgment

■ Summary judgment, of course, applies to causes of action seeking damages at law and is appropriate thereon "if the pleadings ... together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986). Summary judgment may be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986). Once the moving party properly supports its motion for summary judgment, the non-moving party must establish a genuine issue of material fact in order to preclude a grant of summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson*, 477 U.S. at 247-48. In addition "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

The undisputed material facts are that Sookram and Rogers Chapman signed a written contract for sale,[2] which states that the purchase price for the Parcel was $330,000, and calls for an initial

---

[2]It is undisputed that there is no subsequent contract superseding this written contract. To the extent any other earlier or later agreements exist which are not in writing, they are void under 28 V.I.C. § 242, a local "statute of frauds."

payment of $100,000. It is undisputed that Rogers Chapman has paid the $100,000 deposit but has not paid the remaining $230,000 or executed a note for that amount or gone to a closing which the contract required before she could receive the deed to the Parcel. Since the non-movant, Rogers Chapman, has not produced any evidence to put in dispute the manner in which she received possession of the deed, it is undisputed that she got the deed inadvertently and accidentally from Archibald who had no authority from the owners of the Parcel to pass title to her.

Despite not paying the balance due, Rogers Chapman claims legal title to the Parcel by virtue of Archibald's inadvertent and unknowing transfer of the deed to her possession. S&S, on the other hand, asserts that Rogers Chapman never obtained valid title to the Parcel because the deed, although validly executed by the owner, was never legally "delivered" to her.

This Court is faced with a novel question of law in the Virgin Islands: What constitutes the legal 'delivery' of a deed so that it conveys valid legal title to the recipient? The Virgin Islands Code sets forth the requirements for the execution of a deed, but not the requirements for transferring the deed to accomplish passing title to the new owner. The Court first notes the requirements for the valid execution of a deed, then limns this Court's authority to decide novel questions of local law, and finally defines what constitutes deliver of a deed to real property in the Virgin Islands.

**Requirements for Executing Deed**

An inter-vivos transfer of an estate or interest in Virgin Islands real property can be created only by "a deed of conveyance or other instrument in writing, signed by the person doing the creating, granting, assigning, transferring, surrendering, or declaring the same, or by his lawful agent under written authority, and executed with such formalities as are required by law." 28 V.I.C. § 241. These "formalities" include a requirement that the deed be signed by a conveyor of lawful age, or his agent, and that it be executed in the presence of two witnesses. 28 V.I.C. §§ 41-47.[3] Absent the question of its "delivery," or how the Rajbirs' deed got

---

[3] The "Manner of executing conveyance" in section 41 is as follows:

324

into the hands of Rogers Chapman, the physical deed itself was properly executed as a conveyance of Virgin Islands real property.

## Authority of District Court to Decide Local Law

■ Although this Court was "divested of its original jurisdiction over all civil and criminal matters as of January 1, 1994," *In Re Jaritz Indus. v. Urice*, 36 V.I. 225, 207 B.R. 451, 460 (D.V.I. 1997), rev'd on other grounds, 151 F.3d 93 (3d Cir. 1998), it remains vested with the "judicial power of the Territory" of the Virgin Islands. V.I. CODE ANN. tit. 4, § 2.[4] Indeed, not only is it in this sense a territorial court, it is the "chief court of the territory." *See United States v. George*, 625 F.2d 1081, 1088 (3d Cir. 1980).[5] When exercising diversity jurisdiction, the District Court of the Virgin Islands is not a United States District Court bound under Article III of the Constitution to

---

A conveyance of lands, or of any estate or interest therein, may be made by deed, signed by the person from whom the estate or interest is intended to pass, being of lawful age, or by his lawful agent or attorney and acknowledged or proved, and recorded as directed in this title, without any other act or ceremony.

28 V.I.C. § 41. The requirements of "Execution and acknowledgment of deeds" are stated in section 42:

(a) Deeds executed within the Virgin Islands of lands or any interest in lands therein shall be executed in the presence of two witnesses, who shall subscribe their names to the same as such; and the persons executing such deeds may acknowledge the execution thereof as provided in chapter 5 of this title.
(b) Deeds executed in any State of the United States or in any foreign country may be executed according to the laws of such State or country and the execution thereof may be acknowledged as provided in chapter 5 of this title.

28 V.I.C. § 42. The other formalities regarding conveyances of property in the Virgin Islands are in 28 V.I.C. § 43: "Proof by subscribing witness of execution of conveyance"; § 44: 'Compelling attendance of witness to prove execution of conveyance"; § 45: "Proof of deed by proving handwriting"; § 46: "Certificate of court as to proof of conveyance"; § 47: "Construction of conveyance; description of property."

[4] See Revised Organic Act § 21(a), 48 U.S.C. § 1611(a). The complete Revised Organic Act of 1954 is found at 48 U.S.C. §§ 1541-1645 (1994), reprinted in V.I. CODE ANN., Historical Documents, Organic Acts, and U.S. Constitution at 73-177 (1995 & Supp. 1998) (preceding V.I. CODE ANN. tit. 1) ["REV. ORG. ACT"].

[5] This characterization of the District Court as a territorial court has been reaffirmed recently in several decisions referenced in the tables of decisions without published opinions. *See United States v. Charles*, No. 94-7334, 60 F.3d 817 (3d Cir. May 19, 1995) (affirming on appeal dismissal of indictment for assault on an officer of a court of the United States); *United States v. Cruse*, No. 93-7696, 27 F.3d 559 (3d Cir. May 12, 1994) (vacating in part finding by this Court that it is a "court of the United States"); see also United States v. Galloway, No. 94-7326, 70 F.3d 1257 (3d Cir. Oct. 25, 1995) (voiding prosecution for perjury before court of the United States); see also *In re Jaritz Indus.*, 207 B.R. at 462-67.

attempt to divine how a locally established Virgin Islands appellate court would decide an unresolved question of Virgin Islands law. Even sitting as a trial court,[6] this Court is a court of the Virgin Islands whose rules of decision are the rules of the common law, including the Restatements.

> The rules of the common law, as expressed in the restatements of the law approved by the American Law Institute, and to the extent not so expressed, as generally understood and applied in the United States, shall be the rules of decision in the courts of the Virgin Islands in cases to which they apply, in the absence of local laws to the contrary.

1 V.I.C. § 4 (emphasis added).[7] When exercising its federal diversity jurisdiction, this Court also exercises the judicial power of the Virgin Islands to decide novel questions of territorial law without the need to attempt to predict how the Territorial Court or the Appellate Division would decide the issue.

### Definition of "Delivery"

■   This Court adopts the following as the essential elements of the delivery of a deed: the surrender of its control by the present owner (grantor) simultaneously with the intent thereby to convey title to the new owner (grantee). As other courts have held, "an

---

[6]The Appellate Division of this Court, made up of its two District Court judges and one Territorial Court judge, is clearly a court of the Virgin Islands exercising appellate review of all decisions of the Territorial Court of the Virgin Islands. *See* Rev. Org. Act § 23A, 48 U.S.C. § 1613a; 4 V.I.C. §§ 33, 34.

[7]The legislative history of 1 V.I.C. § 4 makes it clear that the reference to common law includes decisional law, as well as statutory law.

> **Source Note** — 1957. Based on Title IV, ch. 13, § 6, of the 1921 Codes of St. T. and St. J., and St. C., respectively.
> Section 6 of chapter 13 of Title IV of the 1921 Codes, cited above, provided that "The common law of England as adopted and understood in the United States shall be in force in this District, except as modified by this ordinance [code]". As set out herein, the provisions have been rewritten more accurately to express the concept of the Common Law as constituting a body of rules established by precedent, as distinguished from a body of statutory law, and to extend the application of the rules to the restatements of the law prepared and approved by the American Law Institute. *See Callwood v. V.I. Nat. Bank,* 3 V.I. 540, 221 F.2d 770 (3d Cir. 1995).

Note, 1 V.I.C. § 4, p. 254 (1995).

executed deed validly conveys title only when it is 'delivered' by the grantor with present intent to convey...." *Arwe v. White*, 117 N.H. 1025, 381 A.2d 737, 739 (N.H. 1977); *accord Green v. Stanfill*, 612 S.W.2d 435, 436 (Mo. Ct. App. 1981). American Jurisprudence puts it this way:

> While it is impossible to state in exact terms what will or will not constitute a delivery of a deed, as a legal term, 'delivery' of a deed imports that possession, or the right to possession, of the instrument, which is in other respects complete, has passed from the grantor to the grantee with intent to pass title as a present transfer.

23 AM.JUR.2D Deeds § 120 & n.39 (1983). Thus, in the Virgin Islands, a properly executed deed is validly delivered to pass title only when it is delivered by the grantor to the grantee with the present intent to transfer title.

Here, the Court has found it undisputed that Archibald had no intent to give the deed to Rogers Chapman and that he was without authority from the owner even to turn over possession of the deed, much less to deliver it with the intention of passing title to the Parcel. Archibald has acknowledged that he gave the deed to Rogers Chapman by accident with no intent thereby to convey title to her. (Archibald Aff. Exh. B at 7-8.) All other knowledgeable persons swear that the Rajbirs did not authorize the delivery of the deed to Rogers Chapman. (Aff. of Soogan Rajbir, Exh. A at 4; Aff. of Sookram; Exh. D at 5-6; Aff. of Chandrika Rajbir, Exh. E at 5.) Rogers Chapman has provided no evidence by affidavit, deposition, or otherwise to support her contention that the deed was legally delivered to her or which would put this material fact in dispute.

■ The Court therefore holds that Rogers Chapman never received valid title to the Parcel because the deed was never delivered to her as required by local law. Possession of the deed was not given to her with the intention of thereby passing title of

327

the Parcel to her. Accordingly, her recordation of the deed purporting to vest title in her is void and must be canceled of record.[8]

■ The Court is unable to grant judgment on the other two claims of S&S, namely, that Rogers Chapman wrongfully maintains physical possession of the Parcel and that S&S is the rightful owner of the Parcel. The material facts are in dispute, which prevents an award of summary judgment. The contention is that Rogers Chapman exercises control over the property, even though she has never paid the balance of $230,000 due on the purchase price. S&S claims she has prevented it from completing the project, among other things. She alleges that the agreed-upon construction is not finished, and that what is completed was done poorly. Regarding S&S's claim that it is the rightful owner of the Parcel, the Court has insufficient and disputed evidence whether S&S ever performed its oral contract by paying the Rajbirs in full, or whether the Rajbirs or S&S or Sookram has the right to the title.

## Conclusion

Rogers Chapman never received valid title to Parcel No. 56-79 Estate Frydenhal, St. Thomas, United States Virgin Islands, and her recordation of the deed purporting to vest title in her is void and must be canceled of record. This Court cannot find whether Rogers Chapman wrongfully maintains possession of the Parcel or who is the rightful owner and title-holder of the Parcel. An appropriate order is attached.

### ORDER

For the reasons stated in the foregoing Memorandum, it is hereby

---

[8]Defendant contends that because the original complaint, filed over seven years ago and subsequently amended, refers to her "on information and belief" as the "record title holder," S&S is barred from challenging her right to the title. Such a claim is without merit.

**ORDERED** that the motion of S&S Services, Inc. for summary judgment is **GRANTED IN PART,** in that Laurenceteen Rogers Chapman never received valid title to the Parcel No. 56-79 Estate Frydenhal, St. Thomas, United States Virgin Islands, and that her recordation of the deed purporting to vest title in her is void and must be canceled of record. The Recorder of Deeds for the District of St. Thomas and St. John is directed to void and cancel the recordation of the deed to Laurenceteen Rogers Chapman on March 6, 1991 in Vol. 37-H, at page 333, Doc. No. 898, as noted in Aux. 39, page 97, and that the said motion is **DENIED IN ALL OTHER RESPECTS.** It is further

**ORDERED** that Civil No. 91-405 is consolidated with this matter.